Case 2:16-cr-00987   Document 27   Filed in TXSD on 03/01/17   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
March 01, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| VS. § | CRIMINAL ACTION NO. 2:16-CR-987 |
| § | |
| JESSICA KNIGHT, *et al*, § | |
| § | |
| Defendants. § | |

## ORDER DENYING MOTIONS TO SUPPRESS

Before the Court are Defendants Jessica Knight and Joseph DeSoto, Jr.'s motions to suppress evidence (D.E. 21, 22). Knight and DeSoto (Defendants) are charged by indictment (D.E. 15) with one count of conspiracy to transport an alien in the United States in violation of the law and one count of transporting an alien in the United States in violation of the law. Defendants complain that the evidence against them was obtained in violation of the Fourth Amendment's prohibition of unreasonable searches and seizures. They raise two issues: (1) there was no reasonable suspicion to extend the immigration checkpoint stop beyond its permissible scope; and (2) there was no consent or probable cause to search the vehicle.

The Government filed a response to the motion (D.E. 25), and the Court held a hearing on February 1, 2017. At the conclusion of the hearing, the Court denied the motions. Defendants then filed a motion to reopen evidence (D.E. 26), which the Court granted. The Court heard additional evidence on February 2, 2017, and partially denied the motions finding that there was reasonable suspicion to extend the stop. The Court took the issue of whether there was probable cause to search the vehicle under

advisement. After due consideration of the evidence and the arguments of the parties, the motions (D.E. 21, 22) are DENIED.

## FACTS

On November 13, 2016, Border Patrol Agent Pedro Cantu[1] was working one of the primary inspection lanes at the Falfurrias Border Patrol checkpoint. Traffic was heavy and at about 9:30 a.m., the Defendants' vehicle, which had Louisiana license plates, approached. Knight was driving and DeSoto was a passenger. Knight did not come to a stop but rather slowly rolled past Agent Cantu which raised his suspicion. He tapped the rear window and the vehicle stopped.

Agent Cantu instructed Knight to roll down her window and he asked where they were going. Instead of answering the question, Knight took a sip from an energy drink and the agent noticed that the can and her hand were shaking. Agent Cantu has been trained to look for signs of nervousness. He stated that persons who are involved in illegal activity tend to avoid verbally answering questions by doing things such as drinking, eating, or simply nodding. Officer Cantu noticed that DeSoto was fidgeting in the passenger seat and DeSoto leaned over and answered the agent's question. This was unusual and further raised the agent's suspicion.

DeSoto stated that they were going to a birthday party which further raised Agent Cantu's suspicion because of the out-of-state license plates. If they were going to a birthday party, they would have been driving south, not north. Agent Cantu asked Knight

---

[1] Agent Cantu has been a border patrol agent for six and a half years. He previously served as a military police officer in the United States Air Force and is in the reserves.

who the car belonged to and she stutteringly replied that it was hers. Both Defendants said they were U.S. citizens and he believed them.

Agent Cantu referred Defendants to secondary inspection because he suspected that there was something illegal in the car. He asked the canine officer, Agent Jose Trevino, to run the dog on the car in secondary inspection. Agent Trevino and his dog had been in another inspection lane. At secondary, Agent Cantu asked Defendants to step out of the vehicle and he and other officers questioned them separately. As he questioned Knight, Agent Cantu saw the dog standing in the rear seat of the vehicle and Agent Trevino informed him that the dog was indicating to the trunk area. Agent Cantu then asked Knight how long it had been since she had opened the trunk and she said about two hours. He asked if there was a person in the trunk and she said yes.

Agent Cantu initially testified that Agent Trevino told him that the dog alerted on the exterior of the vehicle—the rear door/trunk area—but then stated he did not know if the dog alerted on the interior or exterior of the vehicle because he was focused on questioning Knight. Agent Cantu's report indicated that the dog alerted inside the vehicle.

Agent Trevino has been a border patrol agent for thirteen years and a canine handler for nine years. He has worked with his current dog for three years. As part of his training, he learned to recognize when a dog alerts to odors the dog has been trained to detect. He testified that his dog is very reliable and has been trained to detect odors of cocaine, marijuana, methamphetamine, heroin, and concealed humans. His dog alerts to these odors by changing his body posture and increasing his respiration.

On the day in question, Agent Trevino took his dog to the secondary inspection area as requested by Agent Cantu. He conducted a systematic search of the vehicle which involved walking around the car and directing the dog to sniff different areas on the outside of the car. As he came around the rear, between the rear passenger door and the trunk, the dog pulled toward the rear door which was an alert. The dog wanted to get in the vehicle and put his head through the window so Agent Trevino opened the door and allowed the dog to enter the rear seat. The dog then sat and indicated toward the speakers where the trunk is. Agent Trevino explained that an alert occurs when the dog first detects an odor and an indication occurs when the dog locates the source of the odor. He testified that the dog alerted on the exterior of the vehicle and was therefore allowed inside the vehicle. Once inside the vehicle, the dog indicated to the source of the odor—the trunk.

Agent Trevino testified that no consent had been given for the search. He searched the vehicle because the dog alerted. However, his report indicated that Defendants consented to a search. He stated that he mistakenly assumed that Defendants consented to a search in the primary inspection lane because Agent Cantu asked him to run the dog in secondary even though there had been no canine alert at that time. Clearly, no consent was given by the Defendants.

## ANALYSIS

**A. The detention was not unlawfully prolonged.**

Generally, law enforcement officers may not indiscriminately seize traveling vehicles without individualized suspicion. *See City of Indianapolis v. Edmond*, 531 U.S.

32, 44 (2000). However, the Supreme Court has exempted immigration checkpoints from this general rule because of the urgent need to stem the flow of illegal immigration and the brief, nonintrusive nature of these checkpoints. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976). "[T]he brevity of a valid immigration stop was a principal rationale for the Supreme Court's conclusion in *Martinez-Fuerte* that immigration checkpoints are constitutional." *United States v. Machuca-Barrera*, 261 F.3d 425, 433 (5th Cir. 2001).

The permissible duration of an immigration checkpoint stop is the time reasonably necessary to determine the citizenship status of the person stopped. *Id.* (*citing United States v. Jackson*, 825 F.2d 853, 862 (5th Cir. 1987) (en banc)). Courts will not scrutinize the particular questions a border patrol agent chooses to ask as long as they generally relate to determining citizenship status. *Id.* "[W]hile a border patrol agent may refer a car to secondary for any reason (or no reason at all), . . . the length of the detention is still limited by the immigration-related justification for the stop." *Id.* at 434 n. 29 (citation omitted).

A border patrol agent may extend the duration of the stop if the initial routine questioning generates reasonable suspicion of other criminal activity. *Id.* at 434. "Thus, an agent at an immigration stop may investigate non-immigration matters beyond the permissible length of the immigration stop if and only if the initial, lawful stop creates reasonable suspicion warranting further investigation." *Id.* Reasonable suspicion exists when an officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the seizure. *See, e.g., United*

*States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002). The Supreme Court has "said repeatedly that [courts] must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (*quoting United States v. Cortez*, 449 U.S. 411, 417 (1981)). This analysis "is necessarily fact-specific, and factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion." *Santiago*, 310 F.3d at 340.

When Agent Cantu referred Defendants to secondary inspection, he had already determined that they were United States citizens so the immigration-related justification for the stop had ceased. However, the facts articulated by Agent Cantu—Knight's initial failure to stop for inspection, avoidance of verbal answers, and stuttering; DeSoto answering the question for Knight; and Defendants' actions indicating nervousness (shaking hands and fidgeting)—were, when considered together, sufficient for Agent Cantu to believe that criminal activity was afoot. Thus, the Court finds that the further detention in secondary inspection was justified by reasonable suspicion.

    **B. There was probable cause to search the vehicle.**

The Fourth Amendment prohibits a warrantless search of a vehicle. *United States v. Dovali-Avila*, 895 F.2d 206, 207 (5th Cir. 1990) (per curiam). One exception to the general rule is a search that is justified by probable cause. The Fifth Circuit has made clear that "1) a 'dog sniff' does not constitute a search whether it occurs at the primary checkpoint or at the secondary checkpoint, and 2) a 'dog alert' is sufficient to create probable cause to conduct a warrantless vehicle search." *Id*.

The Defendants argue that the agents' testimony is not credible because they gave conflicting testimony which differed from their reports regarding consent to search and whether the dog's alert occurred on the exterior or interior of the vehicle. Agent Trevino testified that he was conducting an exterior search of the vehicle when the dog alerted. After the dog alerted, he opened the rear door and allowed the dog inside the vehicle. The Court finds Agent Trevino's testimony about the timing and location of the alert credible. Thus, the Court finds that the search of the vehicle was justified by probable cause.

## CONCLUSION

For the reasons set forth above, Defendants' motions to suppress (D.E. 21, 22) are DENIED.

ORDERED this 1st day of March, 2017.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE